52 N.Y.2d 813 (1980)
State Division of Human Rights, on Complaint of Donald Gladwin, Appellant,
v.
McHarris Gift Center, Respondent.
Court of Appeals of the State of New York.
Argued November 19, 1980.
Decided December 22, 1980.
L. F. Walentynowicz for appellant.
Andrew S. Kowalczyk, Jr., for respondent.
Concur: Judges GABRIELLI, JONES, WACHTLER and FUCHSBERG. Chief Judge COOKE dissents and votes to reverse in an opinion in which Judges JASEN and MEYER concur. Judge JASEN dissents in a separate dissenting opinion in which Judge MEYER also concurs.
Order affirmed, with costs, for reasons stated in the memorandum at the Appellate Division (71 AD2d 813).
Chief Judge COOKE (dissenting).
Presented here is only one question  whether the State Division of Human Rights has jurisdiction under subdivision 2 of section 296 of the Executive Law to act on a complaint charging discrimination through the display and sale of ethnic "joke" novelty items. Because the majority holds that it does not, I must dissent.
As relevant here, subdivision 2 of section 296 makes it an unlawful discriminatory practice for the proprietor "of any place of public accommodation * * * directly or indirectly * * * to * * * display * * * any written or printed communication * * * to the effect that any of the accommodation, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of * * * national origin * * * or that the patronage or custom thereat of any person of [a particular national origin] is unwelcome, objectionable or not acceptable, desired or solicited."
Complainant, an individual of Polish heritage, filed a complaint with the State Division of Human Rights charging the McHarris Gift Center with the unlawful discriminatory practice of denying him equal advantages, facilities, privileges and accommodations of a place of public accommodation *815 because of his national origin. The basis of the complaint was the sale and display by McHarris Gift Center of three novelty items that were demeaning to persons of Polish extraction. The three items were a pencil with an electric cord marked "Polish Calculator", a cylinder marked "Polish bowling ball", and a mug with the handle inside marked "Polish mug." Although the State division dismissed the complaint for lack of jurisdiction, the Human Rights Appeal Board disagreed, finding both jurisdiction and probable cause to proceed further pursuant to the Human Rights Law. McHarris Gift Center then commenced a proceeding in the Appellate Division pursuant to section 298 of the Executive Law to annul the board's order. The Appellate Division granted the petition, reversed the board's order and dismissed the complaint. The court concluded that the items were "offensive and in poor taste", but that they were not communications prohibited by subdivision 2 of section 296. This appeal followed and the majority now affirms.
I am unable to join in this affirmance. The Human Rights Law was designed "to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" and "to eliminate and prevent discrimination" in, among other things, places of public accommodation (Executive Law, § 290, subd 3). Liberal construction of the statutory provisions is necessary to effectuate its purposes (see New York Inst. of Technology v State Div. of Human Rights, 40 N.Y.2d 316, 324-325).
Subdivision 2 of section 296 quite definitely proscribes the display of a printed or written communication which suggests that the patronage of a person of a particular national origin at a place of public accommodation is "unwelcome, objectionable, not acceptable, desired or solicited." It forbids the denial or withholding of equal access to and treatment in such places. The statute unquestionably prohibits a proprietor from excluding a particular group by means of a sign prominently displayed directly stating the exclusion. It also reaches the less obvious discriminatory conduct that takes the form of exclusion by inference (see Matter of Trowbridge v Katzen, 14 AD2d 608).
*816 There can be no doubt that the items displayed here were a printed or written communication. On one level the items communicate simply the point of the so-called "joke"  the crude, unfair and totally incorrect picture of persons of Polish heritage. While possibly some may find humor in this or consider it harmless bad taste, to others the communication from these items when displayed may be far different and far more destructive: that the patronage of persons depicted and ridiculed by the so-called "joke" is unwelcome, objectionable or unacceptable. It is the latter that the majority refuses to acknowledge.
This court is not called upon at this time to say that the display here necessarily evinces the prohibited conduct and constitutes an unlawful discriminatory practice. Indeed, the court is not asked to decide whether the complaint should be sustained on the merits. The only issue is whether the State division has jurisdiction over this complaint. At the very least, the possibility of a veiled discriminatory tactic can be discerned here. Not only does the majority ignore this, but in denying jurisdiction here, it effectively prohibits complaints of discrimination that take the form of exclusion by indirection.
By today's action, the majority sweeps aside and needlessly restricts the protections against discrimination intended by subdivision 2 of section 296. Given the language of the statute, its remedial purposes and the acts at issue, I am unable to join in the majority's decision.
JASEN, J. (dissenting).
I join in Chief Judge COOKE'S dissent, but, in doing so, I would add that the fundamental right of all ethnic and racial groups to be free of the adverse effects of intentional ethnic or racial discrimination and ridicule was intended by the Legislature to be protected in enacting subdivision 2 of section 296 of the Human Rights Law. Any individual of Polish heritage actually or likely to be present in the gift store could reasonably have regarded the words printed on the particular items displayed as a direct personal insult and designed to single out persons of Polish heritage for ridicule and discrimination.
The statutory grounds of objection to this kind of public display of discrimination and defamation are identical with *817 the objections in the past to common signs saying, "No Irish Need Apply", "Whites Only", and "Gentiles Only".
It follows that unless one is willing to reject the proposition that certain racial and ethnic groups in this country have in fact suffered injuries in the past as a result of racial and ethnic defamation and ridicule that have been perpetuated in the public mind, one cannot reject the proposition that the State Legislature intended, in enacting subdivision 2 of section 296 of the Human Rights Law, to correct this injustice and ameliorate social tensions resulting from such discriminatory and defamatory actions. It is a statute specifically directed at a defined evil  discriminatory practice against a person because of his "race, creed, color, national origin or sex". Such discriminatory acts directed at a specific ethnic group not only stigmatize them as a group, but also as individual members of such group being publicly exposed to such discrimination and ridicule. It is for this reason, I believe, that the Legislature, having knowledge of racial and ethnic discrimination in our State, decided to hold accountable those who intentionally publicly display objects with printed words which are discriminatory and defamatory against an identifiable racial or ethnic group. Although only those of Polish heritage are the most direct victims of the discrimination and ridicule displayed here, the general public also suffers harm when such discriminatory material is disseminated. Such actions, in my opinion, contribute to the creation and maintenance of prejudicial beliefs and discriminatory behavior throughout our society which in turn lead to structured social inequalities between people of different ethnic and racial groups.
Since the Legislature has commendably expressed a desire to protect persons of all ethnic groups and religious persuasions from the effects of the type of discrimination involved here, I would reverse the order of the Appellate Division and hold that the State Human Rights Appeal Board correctly found both jurisdiction and probable cause to proceed further pursuant to the Human Rights Law.
Order affirmed, etc.